Case 4:25-cv-01333-JCB    Document 1-14    Filed 12/05/25    Page 2 of 165 PageID #: 967

5/6/2025 4:22 PM
Cheryl Fulcher
District Clerk
Hopkins County, Texas
Rebecca Halter

**NOTICE: THIS DOCUMENT CONTAINS SENSITIVE DATA.**

CAUSE NO. CV45833 _____

| | | |
|---|---|---|
| **CITY OF SULPHUR SPRINGS** | § | **IN THE DISTRICT COURT** |
| | § | |
| **VS.** | § | **62nd JUDICIAL DISTRICT** |
| | § | |
| **MIAMI-DADE STEEL, LLC d/b/a** | § | |
| **MIAMA STEEL, MICHAEL COX,** | § | |
| **SHANA COX, AND DARREN** | § | |
| **HALLMAN, INDIVIDUALLY** | § | **HOPKINS COUNTY, TEXAS** |

<u>**PLAINTIFF'S ORIGINAL PETITION FOR FRAUD, FRAUDULENT CONCEALMENT, STATUTORY FRAUD, TORTIOUS INTERFERENCE OF BUSINESS RELATIONSHIP AND CONTRACT, CIVIL CONSPIRARY, BUSINESS DISPARAGEMENT, ABUSE OF PROCESS AND, IN THE ALTERNATIVE, FOR GROSS NEGLIGENCE**</u>

Plaintiff, CITY OF SULPHUR SPRINGS files this Original Petition against Defendants, MIAMI-DADE STEEL, LLC d/b/a MIAMI STEEL, MICHAEL COX, SHANA COX, and DARREN HALLMAN, and would respectfully show the court the following:

**DISCOVERY CONTROL PLAN**

1. As provided in Rule 190, Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery under Level 3 and affirmatively pleads that this suit is not governed by the expedited actions process under Rule 169 of the Texas Rules of Civil Procedure. Plaintiff further pleads for full and complete discovery into Plaintiff's claims against Defendants, as well as discovery and full, uninhibited disclosure into any other related claims or actions of Defendants, including but not limited to defrauding the United States Government, including any and all of its independent state government, as well as the State of Texas, at any and all levels of its government.

**PLAINTIFF**

2. Plaintiff, CITY OF SULPHUR SPRINGS, is a sovereign home rule Texas city.

**DEFENDANTS**

3. Defendant, MIAMI-DADE STEEL, LLC, is a corporation organized under the laws of the state of Delaware. MIAMI-DADE STEEL, LLC is authorized to do business in Texas and may be served with process by serving any of its Members and/or Officers JULIO JIMINEZ, GUSTAVO LOPEZ, JUANITA LOPEZ, ROBERT SOPER, or BRETT TOLLMAN. Defendant may also be served with process by serving THE CORPORATION TRUST COMPANY, its registered agent, by certified mail, return receipt requested, addressed to the registered office located at CORPORATION TRUST CENTER, 1209 Orange Street, Wilmington, DE 19801.

4. This Court has jurisdiction over MIAMI-DADE STEEL, LLC under Section 17.042(1), Texas Civil Practice and Remedies Code, because said Defendant held themselves out to conduct business in Texas and with Texas branches of government and/or contracted with a Texas resident or governmental entity and either party is to perform the contract in whole or in part in this State.

5. Defendant, MICHAEL COX, is a individual and is a resident of the State of Florida.

6. This Court has jurisdiction over MICHAEL COX under Section 17.042(1), Texas Civil Practice and Remedies Code, because said Defendant held himself out to conduct business, whether individually or acting as an agent of one or both Co-Defendants, in Texas and with Texas branches of government and/or contracted with a Texas resident or governmental entity and either party is to perform the contract in whole or in part in this State. Further, Defendant COX travelled to Texas and committed the acts complained of herein, in whole or in part, in person within Texas. Defendant COX has engaged in substantial, not isolated activities within Texas as defined by Texas's long arm statutes.

7. Defendant, SHANA COX, is a individual and is a resident of the State of Florida.

8. This Court has jurisdiction over SHANA COX under Section 17.042(1), Texas Civil Practice and Remedies Code, because said Defendant held herself out to conduct business, whether individually or acting as an agent of one or both Co-Defendants, in Texas and with Texas branches of government and/or contracted with a Texas resident or governmental entity and either party is

Copy from re:SearchTX

to perform the contract in whole or in part in this State. Defendant COX has engaged in substantial, not isolated activities within Texas as defined by Texas's long arm statutes.

9. Defendant, DARREN HALLMAN, is a individual and is a resident of the State of New York.

10. This Court has jurisdiction over DARREN HALLMAN under Section 17.042(1), Texas Civil Practice and Remedies Code, because said Defendant held himself out to conduct business, whether individually or acting as an agent of one or both Co-Defendants, in Texas and with Texas branches of government and/or contracted with a Texas resident or governmental entity and either party is to perform the contract in whole or in part in this State. Defendant HALLMAN has engaged in substantial, not isolated activities within Texas as defined by Texas's long arm statutes.

## VENUE

11. Venue is proper in this county in that the events giving rise to this cause of action occurred within Hopkins County. Furthermore, Defendants claim to have been rightful parties to a contract negotiated and agreed to in Hopkins County, Texas, and relating to real property located in Sulphur Springs, Hopkins County, Texas. Defendants' actions and dealings with the Plaintiff governing Texas city violated Texas statutes regarding dealings and representations made to Texas governing officials and governing authorities. Defendants' actions and dealings with the Plaintiff included Defendants' intent to defraud the City of Sulphur Springs and to gain unlawful access to tax money paid by the citizens of Sulphur Springs by fraudulent means.

## JURISDICTION

12. The damages sought in this suit are within the jurisdictional limits of the Court. Specifically, Plaintiff seeks relief from Defendants in an amount exceeding $1,000,000.00.

## FACTS

13. Plaintiff and Defendant MIAMI-DADE STEEL, LLC d/b/a MIAMI STEEL (hereinafter "MIAMI STEEL") began discussions into a contractual business relationship in early 2024. Defendant MIAMI STEEL sent its employee and Co-Defendant MICHAEL COX to negotiate with Plaintiff toward the potential of a business and contractual relationship between

Plaintiff and MIAMI STEEL, and the parties entered into business discussions pertaining to the potential transferring of significant amounts of government land and contractual agreements for significant government-related tax relief and financial benefits to be ***granted*** to MIAMI STEEL as a package deal for MIAMI STEEL to establish a major economic development revenue in the City of Sulphur Springs, Texas, and for her citizens. Both MIAMI STEEL and MICHAEL COX represented to Plaintiff that all such discussions and business negotiations were conducted in good faith.

14. Defendants MIAMI STEEL and COX were also aware at all times that Plaintiff was a governmental entity, and the real property and incentives discussed between parties included assets and incentives that were owned by and/or held on behalf of citizens of Sulphur Springs and the State of Texas as taxpayers and Plaintiff's trusting fiduciaries. Defendant MIAMI STEEL's representative and employee MICHAEL COX, whom MIAIM STEEL selected and sent in person twice to Sulphur Springs, Texas, on their behalf to engage in discussions and contractual negotiations with Plaintiff is a convicted felon for defrauding the federal government out of millions of taxpayer dollars. Neither MIAMI STEEL nor MICHAEL COX ever disclosed this significant and prohibitive information with Plaintiff prior to or during any negotiations between Plaintiff and MIAMI STEEL, in violation of state and federal law, as well as in violation of Plaintiff's City Charter.

15. Approximately one month into the negotiations between Plaintiff and MIAMI STEEL, MICHAEL COX communicated with Plaintiff that he could introduce Plaintiff and another entity that MICHAEL COX knew about who was planning to design and build data centers for clients such as Google, Amazon, etc., which would be a potentially good match for Plaintiff's city. MICHAEL COX then introduced Plaintiff to an entity named DELPHI DC, LLC (hereinafter "DELPHI"). At no point leading up to his introduction with Plaintiff and DELPHI did MICHAEL COX claim to be an owner, employee, or part of management with DELPHI. In fact, MICHAEL COX continued to communicate with Plaintiff and facilitate the introduction with DELPHI, with the email address MICHAEL COX had always used in his communications with Plaintiff from MIAMI STEEL.

16. Thereafter, Defendant MICHAEL COX sat in on the introduction of and some initial meetings between Plaintiff and DELPHI, but never identified himself as having any business stake

Plaintiff's Original Petition –         4 of 15
TIBR / TICR

Copy from re:SearchTX

or ownership interest in DELPHI. The representative for DELPHI did not ever represent that MICHAEL COX was any sort of owner, employee, or part of management with DELPHI. During this whole time period, Plaintiff continued to negotiate and discuss business with MIAMI STEEL through MICHAEL COX. Plaintiff's own due diligence into the ownership and operations of DELPHI, produced no record of MICHAEL COX nor any owners or employees of DELPHI, other than the individual who MICHAEL COX initially introduced to Plaintiff. Plaintiff continued to meet with DELPHI and its representative without MICHAEL COX and Plaintiff ultimately entered into a contractually binding letter of intent ("LOI"), with DELPHI.

17. In the months following the signing of the LOI, Plaintiff discovered that MICHAEL COX was privately claiming to have an ownership interest in DELPHI, and threatening to sue DELPHI if it continued with its business relationship with Plaintiff, unless DELPHI paid an undisclosed amount of money to COX or agreed to grant COX ownership interests in DELPHI moving forward. MICHAEL COX is not listed on any DELPHI documents listed with the Florida Secretary of State and prior to signing its LOI with DELPHI, Plaintiff had no reason to believe that MICHAEL COX was ever a representative of any entity other than MIAMI STEEL, with whom Plaintiff believed it was still negotiating through its representative MICHAEL COX. DELPHI never communicated with Plaintiff that MICHAEL COX was an agent of any kind for DELPHI and never communicated any apparent or actual authority to Plaintiff that COX was authorized to act as an agent of DELPHI in any independent discussions with Plaintiff. Prior to DELPHI signing the LOI with Plaintiff, COX never communicated or demonstrated to Plaintiff any type authority for COX to act on behalf of DELPHI or any type of agency bestowed in COX from DELPHI.

18. After Plaintiff raised questions to both MIAMI STEEL and DELPHI of Plaintiff's discovery COX's involvement in and convictions for government fraud, BRETT TOLLMAN, a Member and/or officer of MIAMI STEEL, contacted Plaintiff's offices and identified himself only as "General Counsel" for MIAMI STEEL. BRETT TOLLMAN then made various representations to Plaintiff that defended COX's criminal actions, minimized Defendant COX's convictions for fraud, and made factual misrepresentations to Plaintiff of the crimes for which COX was charged with and to which he pled guilty, claiming they were merely "trumped up charges." It was not until this conversation with MIAMI STEEL, through TOLLMAN, that Plaintiff was officially notified

Copy from re:SearchTX

about MICHAEL COX's alleged ownership interest in DELPHI. Through TOLLMAN, MIAMI STEEL's attempts to defend COX, as well as MIAMI STEEL's expressed full and apparent knowledge of COX's criminal history clearly demonstrated MIAMI STEEL's knowledge and support of COX's negotiations with Plaintiff on their behalf, as well as their knowledge that such government fraud was not disclosed to Plaintiff. MIAMI STEEL's knowledge of and support of COX's personal claims of ownership interest(s) in DELPHI demonstrated that MIAMI STEEL was complicit and/or also involved in COX's claims of ownership for DELPHI. This knowledge and support of their agent COX also indicates that COX was acting on MIAMI STEEL's behalf, or acting at MIAMI STEEL's instructions to interfere with Plaintiff's contractual and business relationship with DELPHI on behalf of MIAMI STEEL.

19. Due to the threats of litigation from MICHAEL COX against DELPHI, Plaintiff's contractual relationship with DELPHI ended. During this time, Plaintiff lost significant amounts of time in which it could have been negotiating with other entities and individuals to find partners to enlist in the economic ventures similar with those negotiated with MIAMI STEEL and consummated with DELPHI. With their knowledge and support of their agent MICHAEL COX's serious convictions for defrauding the government, it is clear that MIAMI STEEL never participated in good faith negotiations with Plaintiff. MIAMI STEEL's selection of a convicted felon for defrauding the government to directly negotiate with Plaintiff for *grants* of real property, tax incentives, and other valuable assets to MIAMI STEEL at the expense of Plaintiff's citizens and taxpayers, constitutes a prima facie showing of bad faith from MIAMI STEEL. In October of 2024, Plaintiff sent DELPHI formal notice that Plaintiff was terminating the LOI and, per the LOI, the contract between the parties was wholly terminated immediately.

20. In December of 2024, MICHAEL COX and DARREN HALLMAN (who was unknown to Plaintiff before this time) filed a lawsuit in Florida state Court against DELPHI, its representative, its financier, and Plaintiff's City Manager Marc Maxwell, *individually*. Among other conspiracy theories, COX and HALLMAN claim that Maxwell somehow acted beyond his scope of City Manager and conspired to cut COX and HALLMAN out of the LOI between Plaintiff and DELPHI. Oddly, COX and HALLMAN did not include Plaintiff as a party to their suit despite the fact that Maxwell would have been negotiating and conducting business at all times relevant to their suit directly within the scope of Maxwell's employment and agency for Plaintiff. Even

with this knowledge, COX and HALLMAN did not even attempt to pierce the corporate veil or challenge Plaintiff's immunity (or Maxwell's immunity acting as Plaintiff's agent) in their suit. Despite their suit's claims of ownership in DELPHI and their monetary loss from the LOI being executed without them, COX and HALLMAN did not claim any sort of privity of contract in their suit (the LOI was only between Plaintiff and DELPHI), or any loss at the fault of Plaintiff for that contract. Maxwell does not have and has never had any ownership interest in DELPHI, nor did COX and HALLMAN allege such. It is unclear what COX and HALLMAN believe that Maxwell could have gained from any conspiracy against them regarding DELPHI. Maxwell never travelled to Florida to negotiate with any of the Defendants or DELPHI at any point, nor did COX and HALLMAN allege such against Maxwell.

21. Despite their clear knowledge and support of MICHAEL COX's claims of ownership in DELPHI, oddly MIAMI STEEL is not a named Plaintiff in the Florida lawsuit against DELPHI and Maxwell. In fact, MIAMI STEEL is not described or named anywhere in COX and HALLMAN's petition! The facts of their petition actually claim that COX was an individual essentially searching far and wide across the country as a consultant or liaison for companies looking to develop data centers. This couldn't be further from the actual truth as COX approached Plaintiff only as the agent MIAMI STEEL, negotiated with Plaintiff toward a potential contract between Plaintiff and MIAMI STEEL, and was not involved in the final contractual negotiations between Plaintiff and DELPHI, nor involved in the signing of the LOI. After DELPHI signed the LOI with Plaintiff, COX seemed uninterested in negotiating with Plaintiff on behalf of MIAMI STEEL any further and those negotiations ceased. Instead, COX focused his energy on threatening litigation against DELPHI, causing the LOI and the business and contractual relationship between Plaintiff and DELPHI to terminate, and eventually suing Plaintiff's City Manager and DELPHI in Florida. Whether he was acting as agent of MIAMI STEEL or individually, MICHAEL COX was at the center of the sabotage of the business and contractual relationship between Plaintiff and DELPHI. COX's and/or MIAMI STEEL's actions directly and proximately caused Plaintiff and its citizens to lose millions of dollars in valuable time and contractual benefits which Plaintiff was never able to realize. Plaintiff later discovered that MICHAEL COX has intentionally used the name and identity of his wife, SHANA COX, instead of his own name in business ventures which he has an interest. This has allowed MICHAEL COX to continue conducting business with other

Copy from re:SearchTX

entities, including with governmental entities, while concealing his previous fraudulent felonies committed against the government, as well as his guilty pleas and convictions for those crimes.

## COMMON LAW FRAUD

22. Plaintiff incorporates all facts stated above as if recited verbatim in this section.

23. All Defendants, whether through their agent and representative MICHAEL COX, or individually each made material and false representations to Plaintiff as described above.

24. When each Defendant made such representations to Plaintiff, each Defendant knew or should have known the representations were false and/or made the representations recklessly, as a positive assertion, and without knowledge of its truth.

25. Each Defendant made their false representations to Plaintiff with the intent that Plaintiff act on the representations.

26. Plaintiff did rely on each Defendants' false representations made to Plaintiff and those false representations caused Plaintiff injury.

## FRAUD BY NON-DISCLOSURE

27. Plaintiff incorporates all facts stated above as if recited verbatim in this section.

28. All Defendants, through MICHAEL COX concealed COX's criminal convictions of defrauding the government to the Plaintiff.

29. Defendants each had a duty to disclose this material fact to the Plaintiff prior to and after executing a contract with Plaintiff.

30. Defendants each knew that Plaintiff was ignorant of this fact and that Plaintiff did not have an equal opportunity to discover this fact.

31. Defendants were deliberately silent when they had a duty to disclose this fact to Plaintiff and Plaintiff's citizens.

32. By failing to disclose this fact, Defendants intended to induce Plaintiff to enter into binding contractual agreements for the acquisition of real property and rights of exclusivity for the development of real property owned by Plaintiff.

Plaintiff's Original Petition –        8 of 15
TIBR / TICR

Copy from re:SearchTX

33. Plaintiff relied on the Defendants' non-disclosure and was injured as a result of acting without the knowledge of the undisclosed facts regarding MICHAEL COX.

## STATUTORY FRAUD

34. Plaintiff incorporates all facts stated above as if recited verbatim in this section.

35. Plaintiff was involved with transactions involving real estate with DELPHI and potentially with MIAMI STEEL. During and after the transaction(s), through the representations of MICHAEL COX, Defendants each made false representations of fact, made false promises, and/or benefited from not disclosing that a third party's representation or promise was false.

36. Defendants false representations and/or promises made to Plaintiff were made for the purpose of inducing Plaintiff to enter into contract(s). Plaintiff relied on each Defendants' false representations and promises.

37. Plaintiff's good faith reliance on the Defendants' false representations and promises caused the Plaintiff injury.

## TORTUOUS INTERFERENCE OF BUSINESS RELATIONSHIP

38. Plaintiff incorporates all facts stated above as if recited verbatim in this section.

39. There was a reasonable probability that the Plaintiff would have maintained a business relationship with DELPH DC, LLC;

40. The Defendant(s) either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct;

41. One or more of the Defendants' conduct was independently tortious or unlawful;

42. The interference proximately caused the Plaintiff injury; and

43. The Plaintiff suffered actual damage or loss as a result.

## TORTUOUS INTERFERENCE OF CONTRACTUAL RIGHTS

44. Plaintiff incorporates all facts stated above as if recited verbatim in this section.

Copy from re:SearchTX

45. The LOI between Plaintiff and DELPHI DC, LLC, was a valid contract subject to interference;

46. The Defendant(s) willfully and intentionally interfered with the contract;

47. One or more of the Defendants' interference proximately caused the Plaintiff's injury.

## CIVIL CONSPIRACY

48. Plaintiff incorporates all facts stated above as if recited verbatim in this section.

49. All Defendants comprised a group of members comprising two or more persons;

50. All Defendants' membership and object in joining in their acts against Plaintiff were to accomplish unlawful purposes and/or lawful purposes by unlawful means.

51. As is clear from their actions, all Defendants had a meeting of the minds on their object(s) and course(s) of action which they planned to take against Plaintiff. One or more of the Defendants committed unlawful, overt acts to further their object or course of action against Plaintiff.

52. As a direct and proximate result of Defendants' unlawful actions against Plaintiff, Plaintiff was caused to suffer damage.

## BUSINESS DISPARAGEMENT

53. Plaintiff incorporates all facts stated above as if recited verbatim in this section.

54. Defendants MICHAEL COX and DARREN HALLMAN published disparaging words against Plaintiff and Plaintiff's City Manager, Marc Maxwell. These disparaging published words included, but are not limited to, Defendants suit filed in Florida state court alleging various conspiracy theories and tenuous claims against CITY's City Manager, Marc Maxwell, *individually*. All of Defendants' disparaging words against CITY and Maxwell were false and were published by Defendants with malice and without any sort of privilege or justification. The published disparaging words made by Defendants against Plaintiff caused and continue to cause Plaintiff special damages in that Plaintiff now has to disclose the lawsuit and Defendants' false allegations of CITY wrongdoing to individuals and ventures with whom the CITY would normally have business and economic development discussions and negotiations, as well as to have to

answer to its City Council, other governing entities, the Texas Municipal League, its insurer and most importantly to its citizens.

## MALICIOUS PROSECUTION AND ABUSE OF PROCESS

55. Plaintiff incorporates all facts stated above as if recited verbatim in this section.

56. Defendants MICHAEL COX and DARREN HALLMAN filed a suit in Florida state court alleging various conspiracy theories and tenuous claims against CITY's City Manager, Marc Maxwell, *individually,* and served Marc Maxwell with the Florida suit by process server in Texas.

57. Defendants did not include CITY or even allege that CITY had any knowledge of the facts of their case, did not allege that CITY had any privity of contract or duty owed to Defendants, and did not allege any sort of wrongdoing whatsoever against CITY. Instead, Defendants sued Marc Maxwell individually for allegations of acting in conspiracy with other individuals while in the scope of his employment and position as City Manager for CITY. Defendants urged these allegations against Maxwell without naming the CITY in any form or fashion, attempting to completely forego to meet any legal burden for piercing the corporate veil, likely to try and keep their case in Florida state court as opposed to federal court or Texas state court. Defendants therefore made illegal, improper, or perverted use of the process after it was issued and had ulterior motives or purposes in using the process against Marc Maxwell individually.

58. In his discussions and negotiations with Defendant COX, Marc Maxwell did operate at all times in the proper scope of duty as an employee of CITY. However, the Defendants' use of process as described above caused the CITY to have to defend Defendants' vexatious litigation and harassing lawsuit directed only against Maxwell and CITY further lost time and money in its ability to conduct CITY business and negotiations due to Defendants' suit. CITY is unaware of any dealings Maxwell had with Defendant HALLMAN, yet HALLMAN joins COX in the claims that Maxwell somehow owed Defendants a duty and/or conspired to commit tortious acts against Defendants.

## JOINT ENTERPRISE

59. Plaintiff incorporates all facts stated above as if recited verbatim in this section.

60. MICHAEL COX, SHANA COX, and MIAMI STEEL were engaged in a joint enterprise because they had either an express or implied agreement amongst themselves, a common purpose to be carried out by the enterprise, a community or pecuniary interest in that common purpose, and each had an equal right to direct and control the enterprise in their actions directed and taken against Plaintiff and Plaintiff's interests. At all times relevant to this suit, MICHAEL COX was acting as the direct representative and agent of MIAMI STEEL and one of its ownership members, SHANA COX, and MICHAEL COX had and communicated that he had actual and apparent authority to act, to negotiate, to contractually bind, and to make representations to Plaintiff on behalf of MIAMI STEEL.

61. MICHAEL COX and DARREN HALLMAN were engaged in a joint enterprise because they had either an express or implied agreement amongst themselves, a common purpose to be carried out by the enterprise, a community or pecuniary interest in that common purpose, and each had an equal right to direct and control the enterprise in their actions directed and taken against Plaintiff and Plaintiff's interests.

**GROSS NEGLIGENCE, PUNITIVE DAMAGES, AND EXEMPLARY DAMAGES**

62. Plaintiff incorporates all facts stated above as if recited verbatim in this section.

63. At all times relevant to this lawsuit, all Defendants acted with knowledge and intent to use MICHAEL COX in order to perpetuate fraud against the United States and Texas governments as described herein. All Defendants knew or should have known about COX's prior acts of defrauding the United States government and COX's guilty plea and conviction(s) for such fraud. Even after the fraud and convictions were discovered by Plaintiff, MIAMI STEEL continued to make false representations about the convictions and fraud through its Member and/or general counsel, BRETT TOLLMAN. Defendant SHANA COX is the spouse of MICHAEL COX and has been identified by MICHAEL COX as a person willing to perpetuate further fraud for MICHAEL COX. Defendant DARREN HALLMAN joined MICHAEL COX as an alleged partner in COX's actions attempting to defraud the United States and Texas governments through Plaintiff as described above. Lastly, MIAMI STEEL is complicit with MICHAEL COX and HALLMAN's lawsuit against Plaintiff's City Manager in that nothing in COX and HALLMAN's lawsuit mentions anything about COX working for MIAMI STEEL or negotiating and attempting to conduct business with Plaintiff on behalf of MIAMI STEEL. For these reasons and the clear

Plaintiff's Original Petition –
TIBR / TICR                     12 of 15

Copy from re:SearchTX

evidence that each Defendant acted with full knowledge and intent of defrauding Plaintiff and her citizens through all the acts of MICHAEL COX. At the very least, these facts make it clear that all Defendants knew or should have known that MICHAEL COX had committed fraud against the government before and was capable of, if not certain to, defraud the government another time for monetary gain and/or to act in unlawful means to achieve monetary gain from the government.

## RESPONDEAT SUPERIOR

64. Plaintiff incorporates all facts stated above as if recited verbatim in this section.

65. Defendant MICHAEL COX committed numerous torts which injured Plaintiff as described herein. At all times relevant to this suit, MICHEAL COX was the employee and agent of MIAMI STEEL. MICHAEL COX committed these torts against Plaintiff while acting within the scope of his employment with MIAMI STEEL and acting as the agent of MIAMI STEEL. COX also committed the torts against Plaintiff while acting within COX's general authority given him by MIAMI STEEL, in furtherance of the business of MIAMI STEEL, and for the accomplishment of the object for which MICHAEL COX was hired by MIAMI STEEL, or at least for the object for which MICHAEL COX was sent to negotiate and conduct business with Plaintiff on behalf of MIAMI STEEL.

## PIERCING THE CORPORATE VEIL AND ULTRA VIRES CONDUCT

66. Plaintiff incorporates all facts stated above as if recited verbatim in this section.

67. To the extent necessary, Plaintiff affirmatively pleads the doctrines of Piercing the Corporate Veil and Ultra Vires Conduct as to individual claims any named Defendants who are also Members of MIAMI-DADE STEEL, LLC, officers of said entity, employees of said entity, or who were acting as agents or representatives of the entity for any reason in their actions or conspiracies to act through MICHAEL COX to the detriment of Plaintiff and her citizens.

## IN THE ALTERNATIVE, CLAIMS OF NEGLIGENCE AGAINST MIAMI STEEL

68. If the Court finds that MIAMI STEEL did not have knowledge of MICHAEL COX's acts of fraud, intentional torts, and other actions complained of herein, Plaintiff pleads the following claims of negligence against MIAMI STEEL related to delegating and authorizing their

Copy from re:SearchTX

agent MICHAEL COX to negotiate and conduct business with Plaintiff despite COX's criminal convictions for defrauding the United States government:

a. Negligence;

b. Negligent Hiring;

c. Negligent Misrepresentation; and

d. Negligence Per Se.

## ATTORNEYS FEES AND COSTS

69. Pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code, Plaintiff hereby requests the recovery of reasonable and necessary attorney's fees and all costs of court incurred by Plaintiff, which will be proven based upon attorney's invoices and testimony, as well as including all fees necessary in the event of an appeal of this cause of action to the Court of Appeals and the Supreme Court of Texas, as the Court deems just and equitable.

## REQUIRED INITIAL DISCLOSURES

70. As provided in Rule 194, Texas Rules of Civil Procedure, required Initial Disclosures of all items listed in Rule 194.2 must be made at or within 30 days after the filing of the first answer unless a different time is set by the parties' agreement or court order.

71. Plaintiff asks the Court to keep the requirement of Initial Disclosures to be made within 30 days.

## PRAYER

Plaintiff prays that Defendants be cited to appear and answer this petition.

Plaintiff further prays that the Court will grant this Petition, that Plaintiff be awarded a judgment against Defendant for actual damages, prejudgment interest, post-judgment interest, reasonable and necessary attorney's fees and all costs of Court as are equitable and just, and for all other relief to which Plaintiff is entitled both in equity and law.

Copy from re:SearchTX

Respectfully submitted,



Nate Smith
City Attorney
CITY OF SULPHUR SPRINGS
Bar no: 24088441
Office Phone: (903) 439-3000
Fax: (903) 439-3110
Email: nsmith@sulphursprings.org

Copy from re:SearchTX